26 C.C.P.A. (Patents)

## SCHMITZ v. SILVER.

### Patent Appeal No. 4135.

Court of Customs and Patent Appeals.

May 1, 1939.

Hazard & Miller, of Los Angeles, Cal. (Fred H. Miller, of Los Angeles, Cal., of counsel), for appellant.

Caesar & Rivise, of Philadelphia, Pa. (Charles W. Rivise, of Philadelphia, Pa., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

There is here brought before us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences in an interference proceeding involving a single count which reads: "1. In an introducer, the combination of an elongated body having means at its forward end for holding an edge of the article to be introduced, a detent guided to slide in the body and projecting from the same for engaging the article, and means for moving the detent toward the forward end of the body."

The specification of appellant's application states: " * * * While the invention is capable of use for many specific purposes, it is intended to have its greatest usefulness for facilitating the placement of a cap over the mouth of the uterus. Such caps may be employed sometimes by physicians or surgeons under circumstances where it is desirable to temporarily cover the mouth of the uterus. Such caps are also sometimes used for the prevention of communicable diseases."

In the decision of the board there is the following statement: "The subject matter involved is an instrument designated here as an introducer designed for use in placing a diaphragm pessary within the vaginal canal. This instrument as defined broadly in the count consists of a tubular body member having a bulbous part at its forward end for engaging the rim of the pessary. Sliding within the body is a detent for the purpose of engaging the diaphragm at an opposite point of the rim and holding it distended and means for moving the detent toward the forward part of the instrument to release the diaphragm."

It appears from the record that the count, as framed, did not originate in either of the applications, but that it was composed by the Primary Examiner and suggested to the parties.

Appellant is the senior party, his application having been filed on August 10, 1931; that of appellee was filed on June 4, 1932. In his preliminary statement appellant alleged conception on November 27, 1930, and reduction to practice on February 12, 1931. These dates were accorded him by the tribunals of the Patent Office and are not in issue before us. Appellee claimed conception early in 1927, with subsequent reduction to practice early in 1930. The tribunals of the Patent Office concurred in according him those dates, and inasmuch as those dates were prior to any claimed by appellant, appellee was awarded priority.

Both parties took testimony and the controversy has been prosecuted by appellant with much vigor. The record discloses most thorough consideration on the part of the various tribunals of the Patent Office. The Examiner of Interferences rendered two written decisions, the second being upon a petition for reconsideration in which he was asked to retract a certain statement made in his original decision. In his second decision, after discussing appellant's contentions in support of the request, the Examiner of Interferences said: "* * * the decision has been reconsidered in view of everything set forth in the request and no change in the decision is found necessary."

Appellant appealed to the Board of Appeals, and also petitioned the Commissioner of Patents to order the Examiner of Interferences to "retract and/or revise" two statements made in his original decision and two made in his second decision. The commissioner denied the petition, saying: "The statements in question set forth the examiner's understanding of certain contentions urged by petitioner in his briefs. A careful consideration of the matter, however, reveals no such inaccuracy in the statements complained of as would warrant supervisory action by the Commissioner. Moreover petitioner will have the opportunity on appeal to present his contentions himself in the form which he desires."

The board rendered a decision on November 11, 1937. Appellant sought reconsideration. This was denied, but the denial was accompanied by a second written decision rendered December 15, 1937. Appellant filed a second request for reconsideration, which was also denied, but a third decision was written in connection with this denial.

It is obvious from the decisions of the several tribunals of the Patent Office that every phase of the case and every contention of appellant was given very courteous and very full consideration by the tribunals of the Patent Office. There will be found in the decisions, taken together, a complete statement of the substance of all material evidence. In view of the fact that, after considering the voluminous record, we find ourselves in agreement with the concurring conclusions reached by those tribunals, we shall not here set forth a detailed review of the evidence, nor do we find it necessary to dwell at any great length upon all the contentions made on behalf of appellant.

The primary question to be determined is whether the board erred in affirming the decision of the Examiner of Interferences relative to the reduction to practice of appellee's device early in 1930.

The finding rests upon the use of an instrument (filed in the record as appellee's Exhibit 8) by one Dr. William M. Savedoff, who appears to have been appellee's family physician.

In the first decision of the Examiner of Interferences it was said: "Dr. Savedoff further testifies * * * in substance that in January, 1930, he had occasion to use the introducer Exhibit 8 on a patient and after insertion he made an examination and found the pessary properly positioned; that he instructed the patient in the use of the instrument and loaned it to her for a short time; that he used Exhibit 8 on several other patients at about that time; that at no time did he encounter any difficulty in the use of the instrument and that he considered the instrument successful although he preferred another type of introducer because the other type was more easily sterilized. Exhibit 8 supports the count in issue and it, together with the testimony of the party Silver and the witness Savedoff clearly establishes reduction to practice for the party Silver in January, 1930."

Discussing the same matter, the board said: "About the end of 1929 * * * Silver testifies that he made two more instruments introduced here as Exhibits 7 and 8. Since Exhibit 7 does not disclose the subject matter of the count, it may be disregarded. The party Silver is relying on Exhibit 8 only for reduction to practice. Exhibit 8 appears to satisfy the terms of the count and this is not questioned by the party Schmitz. This Exhibit 8, Silver gave to Dr. Savedoff in the early part of Janu-

ary 1930, to try out * * *. Dr. Savedoff was Silver's family physician and an old friend. Dr. Savedoff has testified as to the manner in which he manipulated the instrument and has stated that he used the instrument to insert pessaries for a number of his patients. After inserting the diaphragms he has determined whether or not the diaphragm was placed in the proper position by feeling with the fingers. * * * In answer to Q. 31 the witness intimated that in releasing the pessary from the instrument after insertion, he used the index finger of his left hand. Even if the finger was used to separate the rim of the pessary from the detent still we are of the opinion that the instrument comes within the terms of the count for the count is not limited to any releasing feature."

It is the position of appellant that Dr. Savedoff's use of the instrument did not constitute reduction to practice.

This contention is based upon two claims, viz., (a) that Exhibit 8 was designed to be operated "without the use of fingers," it being pointed out that in releasing the pessary from it Dr. Savedoff indicated that he used the index finger of his left hand, and (b) that reduction to practice required a showing that it was successfully used by a female upon herself. There is also argument to the effect that Exhibit 8 constituted nothing more than an abandoned experiment. This we do not find it necessary to discuss.

With respect to the other contentions, appellant obviously seeks to have limitations not expressed in the count read into it. The count itself contains no requirement that the "introducer" be used by a female upon herself, nor does it require its use "without the use of fingers." It is possible that the specifications of the respective parties might support limitations of the kind suggested, but there is no occasion for us to pass upon that. It has not been questioned that the specifications support the count as framed. In the early part of this opinion we have quoted from appellant's own specification the teaching that the caps (also known as pessaries) "may be employed sometimes by physicians or surgeons," and, it may be added, that is the only teaching which the specification contains relative to who "uses" the caps. We take it to be obvious that if the physician or surgeon uses the caps upon a patient he places them, and that he uses the instrument for that purpose. Therefore success-

ful use by a physician would be the very use which appellant defines. Further, it may be repeated, nothing in either specification remotely suggests that it is necessary for the device to be operated without the use of fingers.

Dr. Savedoff's testimony is clear and unequivocal as to his successful use of appellee's Exhibit 8. True, he preferred an instrument of another kind, but this does not affect the issue here. Nothing appears of record which reflects upon Dr. Savedoff's credibility.

Counsel for appellant has urged that appellee concealed and suppressed the invention embodied in Exhibit 8. The evidence does not support such contention but, as we view it, is to the contrary.

For the reasons indicated, the decision of the Board of Appeals is affirmed.

Affirmed.